**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

|  |  |
|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, and JANE DOE 4 individually and on behalf of others similarly situated, | ) ) ) ) Civ. No. |
| Plaintiffs, | ) ) ) **CLASS ACTION COMPLAINT** |
| vs. | ) ) ) **JURY TRIAL DEMANDED** |
| MEDSTAR HEALTH, INC. and DOCTOR JAMES CURTIS ROBERSON II, M.D., | ) ) ) |
| Defendants. | ) ) ) |

Plaintiffs Jane Doe 1, Jane Doe 2, Jane Doe 3, and Jane Doe 4 bring this action against MedStar Health, Inc. and Dr. James Curtis Roberson (collectively "Defendants"). Plaintiffs allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief:

**PARTIES**

1.      Plaintiff Jane Doe 1 is a citizen of Evans, Georgia.

2.      Plaintiff Jane Doe 2 is a citizen of Fort Washington, Maryland.

3.      Plaintiff Jane Doe 3 is a citizen of Silver Spring, Maryland.

4.      Plaintiff Jane Doe 4 is a citizen of Occoquan, Virginia.

5.      Defendant James Curtis Roberson II, M.D. ("Dr. Roberson") was a physician licensed in Maryland and Virginia. At all relevant times, Dr. Roberson was employed by and/or acted as an agent of MedStar Orthopaedic Institute and practiced out of two MedStar office locations in Brandywine, Maryland and Lorton, Virginia.

6.      Defendant MedStar Health, Inc., is a Maryland corporation with its principal place

1

of business in Columbia, Maryland. Defendant MedStar Health, Inc's registered agent for service in the State of Maryland is The Corporation Trust, Inc., located at 2405 York Road, Suite 201, Lutherville Timonium, Maryland 21093.

7.      At all relevant times, Defendant MedStar Health, Inc. owned and managed MedStar Orthopaedic Institute, including the Brandywine and Lorton MedStar Orthopedics locations where Dr. Roberson practiced medicine. Defendant MedStar was responsible for overseeing the daily operations of MedStar Orthopedics, including establishing policies regarding patient care and safety, supervising employees, including Dr. Roberson, and investigating patient reports of physician misconduct.

### JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and interest, and (iii) there is minimal diversity because at least one Plaintiff and Defendants are citizens of different states.

9.      This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims herein arise under 42 U.S.C § 18116. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) in that the claims are so related that they form part of the same case or controversy.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)-(c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

**FACTUAL ALLEGATIONS**

**Dr. Roberson's History of Sexual Misconduct**

11.     Dr. Roberson received his medical degree from Howard University College of Medicine in 1988.

12.     Dr. Roberson was first licensed to practice medicine in Maryland in 2008 under license number D0068136. His license expired on September 30, 2025 and was subsequently permanently revoked by the Maryland State Board of Physicians.[1] He was first licensed to practice medicine in Virginia in 2009 under license number 0101-245740.[2] His license expires July 31, 2026, and is currently suspended pursuant to an order from the Virginia Department of Health Professions.[3]

13.     After he became licensed to practice in Maryland and Virginia, MedStar employed Dr. Roberson to practice medicine out of MedStar Health Orthopedics at Brandywine and MedStar Health Orthopedics at Lorton.

14.     Dr. Roberson's specialties were rheumatology and internal medicine, and he held board certifications in both specialties.[4]

15.     At least as early as 2018, Dr. Roberson began to engage in inappropriate conduct in his practice, including both verbal and physical sexual misconduct of patients.

16.     In December 2018, the Maryland Board of Physicians issued an Advisory Letter to Dr. Roberson in response to a patient complaint. The complaint stated that Dr. Roberson performed

---

[1] https://www.mbp.state.md.us, last visited on May 9, 2026
[2] *Id.*
[3] http://www.dhp.virginia.gov.pdf, last visited May 9, 2026
[4] https://www.certificationmatters.org/practitioner, last visited May 9, 2026

a breast exam without a chaperone in the room and that no chaperone had been offered to the patient. The Letter warned Dr. Roberson that engaging in this type of behavior could be construed as unprofessional practice of medicine.[5]

17.    The December 2018 Advisory Letter from the Maryland Board of Physicians put Defendant MedStar Health, Inc. ("MedStar") on notice that Dr. Roberson was engaging in unprofessional and sexual misconduct in his practice, including medically inappropriate and/or unnecessary breast exams conducted without a chaperone present.

18.    At all relevant times, MedStar represented Dr. Roberson as part of MedStar's medical staff. Plaintiffs and Class members reasonably believed that Dr. Roberson worked for MedStar and was MedStar's employee and/or agent. MedStar owed Plaintiffs the duty of care expected of a medical provider, including reasonable care in hiring and supervising its staff, implementing appropriate policies to keep patients safe, and investigating patient reports of physician misconduct.

19.    Despite the duty owed to Plaintiffs, and disregarding clear indications of Dr. Roberson's misconduct, MedStar took no steps to amend its policies and procedures, initiate additional oversight of Dr. Roberson's practice, require that Dr. Roberson have a nurse or other third-party present when he examined patients, investigate its patients' claims, or conduct a supervisory review. Instead, MedStar permitted Dr. Roberson to continue practicing as he had before the Advisory Letter.

20.    As a foreseeable result of MedStar's failure to act in accordance with the standard of care, Dr. Roberson's sexual misconduct escalated in the subsequent years. He continued to make

---

[5] https://www.mbp.state.md.us, last visited on May 9, 2026

inappropriate sexual remarks to patients, perform unnecessary and sexualized exams, and touch patients in medically unnecessary and sexual ways.

21.    On October 10, 2024, a female patient reported to another physician that Dr. Roberson had touched her inappropriately during a physical examination in May of 2024. In addition to the inappropriate touching, Dr. Roberson asked the patient if she would "mind if [he] gave her oral sex."[6]

22.    That report triggered an investigation of Dr. Roberson, which was performed by the Maryland Board of Physicians. The Board's investigation revealed a troubling pattern of sexual misconduct spanning multiple patients. Among the findings: Dr. Roberson had routinely performed breast examinations that lacked any legitimate medical basis and were conducted without a chaperone present; gave medically unnecessary massages with no medical justification; made inappropriate sexual comments to patients during the course of their appointments; and subjected patients to unnecessary and non-consensual touching of their vaginal areas, including penetration. The Board's Consent Order documents these findings in detail and is attached hereto as **Exhibit A**.

23.    There was no medical necessity for Dr. Roberson's misconduct. In his interview with the Maryland State Board of Physicians, he admitted to inappropriately flirting with patients via email, kissing and hugging patients, and performing oral sex on a patients in his office. Ex. A.

24.    On October 1, 2025, the Board issued an Order for Summary Suspension of Dr. Roberson's license to practice medicine, and on February 2, 2026, the Board issued its Consent Order, permanently revoking Dr. Roberson's license. Ex. A.

---

[6] *Id.*

**Plaintiffs' Experiences**

*Plaintiff Jane Doe 1*

25.    Plaintiff Jane Doe 1 was a patient of Dr. Roberson's for approximately nine years, beginning in 2014 and ending with her last appointment on August 30, 2023.

26.    Plaintiff initially believed that Dr. Roberson was a good doctor, especially since this was her first experience with a rheumatologist and she had heard good things from other patients.

27.    Over time, however, Dr. Roberson's behavior toward Plaintiff began to change. He became increasingly inappropriate, touching her on her legs, thighs, upper back, hips, and chest. During one visit, when she was receiving injections in her knee, Dr. Roberson commented that she "looked stressed" and massaged her shoulders while she was on the exam table.

28.    Despite her increasing discomfort with his advances, Plaintiff struggled to fully recognize Dr. Roberson's behavior as inappropriate, because she had grown to trust him over the years she had been his patient. Dr. Roberson also framed his actions as medically appropriate, telling her that he frequently uses touch to "reassure patients."

29.    During an additional visit, Plaintiff needed an injection in her hip/buttocks area, which required her to lower her underwear. Dr. Roberson rubbed the area both before and after the injection in a way she later felt was unnecessary. Plaintiff has never had another medical professional administer an injection in that way.

30.    Dr. Roberson frequently touched Plaintiff's shoulders, thighs, and chest, including brushing his hands across her breasts during medically-inappropriate massages and rubbing his hands up and down her thighs. Plaintiff was always alone with Dr. Roberson during these visits, without a nurse or other chaperone present.

31. After undergoing knee replacement surgery with a different doctor, Plaintiff attempted to follow up with Dr. Roberson, but discovered that he had abruptly left MedStar. When she called seeking answers, she was told that he had "up and quit," which she found unusual. MedStar never notified Plaintiff of any allegations against Dr. Roberson. She discovered the allegations against him after conducting an online search and speaking with another patient.

*Plaintiff Jane Doe 2*

32. Plaintiff Jane Doe 2 began seeing Dr. Roberson in 2018 and saw him through late 2024. In 2019, Dr. Roberson's behavior toward Plaintiff became increasingly inappropriate. He would insist on overly-close physical proximity, touch her arms and thighs in sensual or lingering ways, and position himself behind her in ways that felt more like an intimate massage than a medical exam. He would also ask her to open her legs so that he could move closer to her, which heightened her discomfort.

33. These incidents occurred during scheduled visits, alone in Dr. Roberson's office without a nurse or a third-party present.

34. Eventually, Plaintiff Jane Doe 2 became so uncomfortable that she left the office. In 2025, she returned to the practice, where she learned that his license had been revoked. MedStar did not provide any explanation, but simply reassigned her to another doctor.

*Plaintiff Jane Doe 3*

35. Plaintiff Jane Doe 3 began seeing Dr. Roberson in 2007, and saw him approximately every three months until September of 2024.

36. During her treatment, Plaintiff regularly received breast exams, due to a family history of breast cancer. She recalls that Dr. Roberson's breast exams felt different than exams performed by other doctors, because his hands lingered longer than normal.

37.    Dr. Roberson would perform massages on Plaintiff using lotion, often telling her that her muscles were tense and that she needed to "relax." During these massages, he would tell her that he was "practicing his hands-on skills."

38.    At the end of some of his visits, Dr. Roberson would kiss Plaintiff on the forehead, which she recognized as inappropriate.

39.    During one of her last visits with Dr. Roberson, he lifted her leg into the air in an awkward and sexualized position, and touched multiple parts of her body during the exam without explaining the reasons for his actions.

40.    These incidents occurred during scheduled visits, alone in Dr. Roberson's office without a nurse or a third-party present.

41.    Plaintiff learned that Dr. Roberson was no longer with MedStar only after an appointment was unexpectedly cancelled, prompting her to call the office. MedStar informed her that Dr. Roberson was no longer there and did not provide any further explanation. This led Plaintiff to suspect that his departure may have been related to sexual misconduct like the kind she had experienced.

*Plaintiff Jane Doe 4*

42.    Plaintiff Jane Doe 4 saw Dr. Roberson approximately every three to four months beginning in 2018 and ending with her last appointment in late 2024.

43.    Plaintiff recalls that Dr. Roberson's behavior became inappropriate in October 2021, after in-person visits resumed following COVID. Dr. Roberson would touch her bare inner thighs and hip flexor area under the guise of checking lymph nodes, often moving closer to her groin than was medically necessary. He would also give her massages, unhooking her bra strap while she was lying on the table to massage her. She recalls feeling his torso pressed up against

her. These incidents occurred during visits that typically lasted around 30 minutes and were always conducted without a nurse or third-party present.

44.     As Dr. Roberson's behavior escalated, Plaintiff became increasingly uncomfortable and began to cancel and reschedule appointments to avoid seeing him. She began altering her behavior before visits—avoiding makeup, not showering, and wearing sports bras to make it more difficult for Dr. Roberson to remove her clothing.

45.     Plaintiff mentioned Dr. Roberson's behavior to another doctor within the same practice, who did not meaningfully respond.

46.     During a November 2023 appointment for hip pain, Plaintiff partially undressed for a hip injection administered by Dr. Roberson. During the examination, Dr. Roberson commented that Plaintiff had "the flexibility of a 21-year-old," which Plaintiff perceived as inappropriate and unprofessional.

47.     Dr. Roberson also hugged Plaintiff after appointments and shared personal details about his marriage and family life that Plaintiff later learned were inappropriate for a physician-patient relationship.

48.     These incidents occurred during scheduled visits, alone in Dr. Roberson's office without a nurse or a third-party present.

49.     In November 2024, Plaintiff contacted MedStar and attempted to reschedule an appointment. She was told her appointment was pushed to February 2025, because Dr. Roberson was on leave. Later, she was informed that he was no longer with the practice.

50.     Plaintiff contacted MedStar again and was connected with the Lorton office manager and legal team. She expressed her frustration that no one had reached out to female patients earlier, as she believes that she could have corroborated reports of his misconduct as early

as summer of 2024. MedStar's legal team asked her questions and apologized.

51.     Since 2024, Plaintiff has seen other rheumatologists, none of whom have examined or touched her in a similar manner.

## TOLLING OF THE STATUTE OF LIMITATIONS

52.     Plaintiffs' claims against Dr. Roberson are tolled because he concealed the existence of those claims by making materially false representations that the medical treatment he provided to Plaintiffs was medically necessary but was in fact not medically necessary and said treatment was performed solely for his own sexual gratification.

53.     Plaintiffs' claims against MedStar are tolled because MedStar knew or should have known of Dr. Roberson's misconduct in 2018, when the Maryland Board of Physicians issued an Advisory Letter to Dr. Roberson in response to a patient complaint that he had performed a breast exam without a chaperone in the room and that no chaperone had been offered to the patient. Instead of making this information available to Plaintiffs, MedStar concealed this material information from Plaintiffs.

## CLASS ACTION ALLEGATIONS

54.     Plaintiffs bring this action on behalf of themselves, and on behalf of the following classes pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the proposed classes (together, the "Class") are defined as follows:

> **Injunctive Relief Class**: All persons who receive medical care from MedStar Health, Inc.

> **Damages Class**: All persons who received medical care from Dr. Roberson at facilities owned and operated by MedStar Health, Inc.

55.     Excluded from the Class are Defendants, their affiliates, employees, officers and directors, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or

10

expand the Class definitions after conducting discovery.

56.     Numerosity: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that the class contains thousands of patients.

57.     Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

   a.   whether the Defendants owed a duty of care to its patients, including protecting them from, and properly responding to, abuse from physicians they employ;

   b.   whether the Defendants breached their duties, including MedStar breaching its duties by failing to have and/or enforce proper policies and procedures for the prevention of, and proper response to, abuse;

   c.   whether MedStar Health, Inc. had a duty to implement and enforce comprehensive rules, regulations, policies, and procedures regarding the staffing, training, supervision, and management of staff at their facilities;

   d.   whether MedStar Health, Inc. and Dr. Roberson proximately caused the injuries suffered by Plaintiffs and the Class; and

   e.   whether MedStar Health, Inc. knew or should have known of Dr. Roberson's misconduct from prior patient complaints and/or the December 2018 Advisory Letter from the Maryland Board of Physicians.

58.     Typicality: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and each member of the Class were patients of Dr. Roberson and were physically examined by him. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

59.     Adequacy: Plaintiffs are adequate representatives because their interests do not

11

conflict with the interests of the Class that they seek to represent, they have retained counsel that are competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

60.     Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

61.     Injunctive Relief: Pursuant to Fed. R. Civ. P. 23(b)(2), MedStar Health, Inc. has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

## CAUSES OF ACTION

### COUNT I
### Negligence
### Against MedStar Health, Inc.

62.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

63.     Plaintiffs bring this claim on behalf of themselves and the Damages Class against MedStar Health, Inc.

64.     At all relevant times, MedStar made representations to Plaintiffs and the Class — through its facilities, its staff, and its public-facing identity as a healthcare system — that the physicians it employed were competent to provide safe and appropriate medical care. Plaintiffs and Class members reasonably relied on those representations in choosing to seek and continue treatment with Dr. Roberson at MedStar's facilities.

65.     As the healthcare system responsible for employing and supervising Dr. Roberson, and for operating the facilities where he saw patients, MedStar owed Plaintiffs and the Class a duty of reasonable care. That duty encompassed not only the provision of competent medical treatment, but also the obligation to protect patients from foreseeable harm arising from the conduct of MedStar's own physicians and staff.

66.     Despite the duty owed to Plaintiffs and the Class, and disregarding clear indications of Dr. Roberson's misconduct, MedStar took no steps to amend its policies and procedures, initiate additional oversight of Dr. Roberson's practice, investigate the patient's claims, or conduct a supervisory review.

67.     MedStar Health, Inc. breached its duty of care by (a) failing to properly screen and train medical personnel; (b) failing to adopt reasonable policies and procedures to prevent sexual misconduct; (c) failing to train staff to identify and report sexual misconduct; (d) failing to

implement additional supervision of Dr. Roberson's practice following the December 2018 Advisory Letter; (e) failing to investigate reports of misconduct and/or refer reports to an appropriate outside agency for investigation.

68.     Defendant's failure to act created a foreseeable risk that Plaintiffs and the Class would also be sexually harassed and abused by Dr. Roberson.

69.     As a direct result of Defendant's negligence, Plaintiffs and the Class have suffered economic and noneconomic damages.

**COUNT II**
**Negligent Hiring**
**Against MedStar Health, Inc.**

70.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

71.     Plaintiffs bring this claim on behalf of themselves and the Damages Class against MedStar Health, Inc.

72.     MedStar is required to make an appropriate investigation of all employees staffed at its facilities. This duty requires that potential applicants are thoroughly and appropriately screened to ensure that they will provide safe and appropriate medical care to patients.

73.     MedStar knew or should have known, through the use of background checks, reference checks, and evaluation, that Dr. Roberson was unfit for his position.

74.     By placing Dr. Roberson in a position of unsupervised authority over patients without adequately screening him, MedStar created the very conditions that made his years of abuse possible.

75.     As a direct and proximate result of MedStar's negligence, Plaintiffs and the Class were harmed by Dr. Roberson, and such harm was foreseeable. Had MedStar shown due care in the screening of its employees, Dr. Roberson would not have been given the access and opportunity

14

to sexually harass and assault Plaintiffs and the Class.

## COUNT III
### Negligent Supervision and Retention
### Against MedStar Health, Inc.

76.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

77.     Plaintiffs bring this claim on behalf of themselves and the Damages Class against MedStar Health, Inc.

78.     MedStar became aware or reasonably should have become aware that Dr. Roberson was engaged in acts of sexual misconduct of patients, yet it failed to investigate, discharge, or supervise him.

79.     MedStar reasonably should have known that, among other things, Dr. Roberson: conducted inappropriate breast examinations; gave patients medically inappropriate massages; touched and penetrated patients' vaginas for no medically appropriate reason; and made inappropriate sexual comments to patients.

80.     With reasonable supervision and protocols in place, MedStar would have known about each of these incidents. But even after the 2018 Advisory Letter, which addressed a patient report that Dr. Roberson had conducted an inappropriate breast exam without a nurse or third-party present, MedStar allowed the abuse to occur and retained Dr. Roberson without taking corrective action.

81.     MedStar failed to take appropriate action to prevent Dr. Roberson from further harming patients.

82.     Because of MedStar's breach of its duty to take action to prevent reasonably foreseeable harm by Dr. Roberson, Plaintiffs and the Class were grievously harmed.

## COUNT IV
### Intentional Infliction of Emotional Distress
### Against All Defendants

83.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

84.    Plaintiffs bring this claim on behalf of themselves and the Damages Class against all Defendants.

85.    Dr. Roberson intentionally and recklessly engaged in sexual misconduct while acting as the treating physician for Plaintiffs, including but not limited to conducting inappropriate breast examinations; giving patients medically inappropriate massages; touching and penetrating patients' vaginas for no medically appropriate reason; and making inappropriate sexual comments to patients.

86.    This conduct is extreme and outrageous, goes beyond all possible bounds of decency, and is utterly intolerable in a civilized community.

87.    At all relevant times, Dr. Roberson acted within the scope of his employment with MedStar. His sexual misconduct occurred during examinations of the type he was employed to perform, in his office and during typical office hours. Dr. Roberson's misconduct occurred in addition to and concurrent with medically appropriate examinations and was therefore actuated, at least in part, for the purpose of serving MedStar. MedStar is therefore vicariously liable for Dr. Roberson's tortious acts.

88.    As a direct and proximate result of Dr. Roberson's misconduct, Plaintiffs and the Class have suffered severe emotional distress.

## COUNT V
### Battery
### Against All Defendants

89.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

90.     Plaintiffs bring this claim on behalf of themselves and the Damages Class against all Defendants.

91.     Dr. Roberson intentionally touched Plaintiffs and the Class members in ways that were harmful and/or offensive. Dr. Roberson intended to cause this harmful and offensive contact.

92.     Plaintiffs and the Class consented to be touched by Dr. Roberson to the extent necessary for him to administer appropriate medical care. Plaintiffs did not consent to be touched by Dr. Roberson for the purpose of his own sexual gratification.

93.     At all relevant times, Dr. Roberson acted within the scope of his employment with MedStar. His sexual misconduct occurred during examinations of the type he was employed to perform, in his office and during typical office hours. Dr. Roberson's misconduct occurred in addition to and concurrent with medically appropriate examinations and was therefore actuated, at least in part, for the purpose of serving MedStar. MedStar is therefore vicariously liable for Dr. Roberson's tortious acts.

94.     As a direct and proximate result of Dr. Roberson's battery against them, Plaintiffs and the Class have suffered economic and noneconomic damages.

**COUNT VI**
**Discrimination Based on Sex in Violation of**
**Section 1557 of the Affordable Care Act**
**Against MedStar Health, Inc.**

95.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

96.     Plaintiffs bring this claim on behalf of themselves and the Class against MedStar Health, Inc.

97.     Section 1557 of the Affordable Care Act states in relevant part:

[A]n individual shall not, on the ground prohibited under . . . *Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.)* . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or

17

activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under . . . Title IX . . . shall apply for purposes of violations of this subsection.

42 U.S.C § 18116.

98.     Upon information and belief, MedStar is a recipient of federal financial assistance.

99.     MedStar, including its administrators with decision-making authority, had actual knowledge of the ongoing sexual harassment and abuse of patients perpetrated by Dr. Roberson since at least 2018, when the Maryland Board of Physicians issued its Advisory Letter concerning a complaint that Dr. Roberson had conducted an inappropriate breast exam on a patient without a nurse or other chaperone present.

100.    Under Section 1557, MedStar was required to promptly investigate and take reasonable steps to address patient allegations and reports of sexual harassment and abuse. MedStar and/or its administrators had the authority to take corrective measures, including by:

a.  Implementing and enforcing best-practice policies and procedures for the prevention of and proper response to reports of sexual abuse and harassment at its facilities;

b.  Thoroughly investigating reports of Dr. Roberson's sexual misconduct and inappropriate behavior; and

c.  Implementing additional oversight and supervision of Dr. Roberson's practice, including adopting reasonable policies providing for the presence of a nurse or other third party during exams.

101.    MedStar was on actual notice of the conduct as described above but nonetheless failed to carry out its duties to investigate and take corrective action under § 1557. MedStar was

18

on notice due to the December 2018 Advisory Letter and additional patient reports that its policies were inadequate to prevent sexual harassment perpetrated by Dr. Roberson.

102. MedStar is and has been deliberately indifferent to the substantial risk of sexual harassment, abuse, and discrimination posed to all of Dr. Roberson's patients.

103. Plaintiffs and the Class were denied equal benefits of their medical care when they were subjected to pervasive, repeated sexual harassment and abuse by Dr. Roberson. Some patients even had to find alternative care, a difficult and stressful process for chronically ill patients who rely on consistent and dependable care by long-term providers who know the specifics of their health issues.

104. In addition to compensatory damages, which are the direct and proximate result of MedStar's actions or inactions, Plaintiffs request the award of attorney's fees pursuant to 42 U.S.C. § 1988(b).

## COUNT VII
**Injunctive and Equitable Relief**
**Against MedStar Health, Inc.**

105. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

106. Plaintiffs bring this claim on behalf of themselves and the Injunctive Relief Class against MedStar Health, Inc.

107. Class members are currently at risk of irreparable harm due to MedStar's failure to enact and enforce appropriate and sufficient policies, procedures, and processes for the prevention of abuse of those to which it provides medical care. On behalf of the Class, Plaintiffs seek injunctive and equitable relief requiring MedStar to implement policies and practices to prevent, and properly respond to, such abuse from occurring in the future.

19

108. The risk of irreparable harm that Plaintiffs and Class Members face is higher than the general societal risk of these harms, and that increased risk is directly traceable to the actions and inactions of MedStar.

109. These harms through which MedStar has placed Plaintiffs and Class Members at risk are irreparable. Abuse, and the trauma, pain, and suffering that it creates, cannot be undone. No monetary compensation can remedy this mistreatment. Therefore, declaratory and injunctive relief is necessary to eliminate the increased risk posed by MedStar's actions and inactions in order to protect Plaintiffs and Class Members from irreparable harm.

110. The common injury suffered by Plaintiffs and the Class – being placed at heightened risk of abuse and assault by MedStar – will be redressed by the requested injunctive relief.

111. MedStar has a duty to protect its patients. This duty includes a responsibility to: (a) protect patients from abuse while receiving care in MedStar facilities; (b) promptly and thoroughly investigate and report known and reasonably suspected instances of abuse at MedStar; (c) properly respond to this abuse when it occurs; and (d) supervise, monitor, and prevent MedStar staff from committing acts of abuse against patients.

112. MedStar has breached its duty towards Plaintiffs and Class Members by failing to implement and enforce necessary and appropriate policies, procedures, and protocols to prevent and properly respond to incidents of abuse.

113. Accordingly, Plaintiffs, on behalf of themselves and the Class, request that the Court issue an Order requiring MedStar to implement and enforce policies and procedures for the prevention of, and response to, abuse at MedStar. These measures should include:

   a. rigorous hiring, screening, and retention protocols;

b. revised guidelines governing interactions between medical providers and patients, including the presence of an additional staff member during sensitive exams;

c. the implementation of best practice policies and procedures for the prevention of abuse;

d. the implementation of best practice policies and procedures for the appropriate response to incidents of abuse; and

e. any additional injunctive relief measures that are supported by the record in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants on each of their Claims and respectfully request that this Court:

A. permit Plaintiffs leave to amend this Complaint after reasonable discovery;

B. empanel a jury to try all issues so triable;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs are entitled;

D. certify the proposed Class pursuant to the Federal Rules of Civil Procedure Rule 23(a), (b)(2), and (b)(3);

E. Designate Plaintiffs as representatives of the proposed Class and Plaintiffs' counsel as Class Counsel;

F. award pre-judgment and post-judgment interest on such monetary relief;

G. grant appropriate injunctive and/or declaratory relief requiring MedStar to implement and enforce policies and practices to prevent future incidents of abuse, including those set out above because: (1) there is a substantial likelihood that Plaintiffs and the Class will prevail on the merits; (2) there is a real and substantial threat that Plaintiffs and the Class will suffer irreparable injury if the injunction is

21

not granted; (3) Plaintiffs and the Class's threatened injury outweighs any threatened harm to MedStar; and (4) granting the injunction will serve the public interest;

H.      award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

I.      grant such further relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully request a trial by jury as to all matters so triable.

Dated: May 9, 2026

Respectfully submitted,

/s/ *Jason S. Rathod*
Jason S. Rathod
(Maryland Federal Bar No. 18424)
Nicholas A. Migliaccio
(Maryland Federal Bar No. 29077)
**MIGLIACCIO & RATHOD LLP**
412 H Street NE, Ste. 302,
Washington DC, 20002
Office: (202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

Joseph G. Sauder (to be admitted *pro hac vice*)
Joseph B. Kenney (to be admitted *pro hac vice*)
Melissa J. Stewart (to be admitted *pro hac vice*)
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: (888) 711-9975
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
jbk@sstriallawyers.com
mjs@sstriallawyers.com

*Attorneys for Plaintiffs*